UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARYA FALLAHI, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 23-cv-3292 (APM) |
| BRAD BELL, in his official capacity, Deputy Chief of Mission, U.S. Embassy in Switzerland, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION

### I.

Plaintiff Arya Fallahi seeks to compel Defendants, who are various federal officials, to adjudicate his nonimmigrant worker visa application, which has now been pending for 14 months since his consular officer interview. Plaintiff claims that the length of time he has waited constitutes agency action unreasonably delayed and unlawfully withheld in violation of the Administrative Procedure Act ("APA"). Compl., ECF No. 1 [hereinafter Compl.], at 4. Plaintiff also brings a claim under the Mandamus Act, asserting that the filing of his application and the payment of the requisite fees entitles him to adjudication of his application. *Id.* at 7. Defendants move to dismiss the case for, among other grounds, failure to state a claim. Defendants' motion is granted.[1]

---

[1] Defendant offers two threshold contentions for dismissal: (1) naming the Secretary of State as a defendant was improper, Defs.' Mot. to Dismiss & Mem. in Supp., ECF No. 7 [hereinafter Defs.' Mot.], at 5–6, and (2) the doctrine of consular nonreviewability bars review, *id.* at 14. Because these are not jurisdictional arguments, the court does not reach them in light of its conclusion that Plaintiff fails to state a claim. *See Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1027 (D.C. Cir. 2021) (holding that consular non-reviewability is a non-jurisdictional issue).

## II.

### A.

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the issuance of nonimmigrant worker visas. 8 U.S.C. § 1202(c). An applicant for such a visa must file an application on either a Form DS-160 or, at the direction of a consular officer, Form DS-156. 22 C.F.R. § 41.103(a)(1). The applicant generally must then appear for an in-person interview before a consular officer. *Id.* § 41.102(a). After a visa application is properly completed and executed, the consular officer then must choose to issue, refuse, or discontinue granting the visa. *Id.* § 41.121(a).

### B.

Plaintiff is a citizen of Iran and Germany and currently resides in Switzerland. Compl. ¶ 8. USCIS approved Plaintiff's I-129 petition in April 2023, as to which his wife and son are derivative beneficiaries. *Id.* ¶ 12. In June 2023, a consular officer at the U.S. Embassy in Switzerland interviewed Plaintiff and his family. *Id.* ¶ 13. After the interview, the officer informed them that their visa applications were placed in "administrative processing." *Id.* ¶ 14. Plaintiff has since made repeated inquiries regarding the status of the applications, but the Embassy "has provided Plaintiff with no meaningful status updates." *Id.* ¶ 15. According to Defendants, the State Department website shows that Plaintiff's application has been "refused." Defs.' Mot. at 1.

Plaintiff states that he and his family "are suffering from significant personal, financial, and emotional hardship" as a result of the delayed adjudication. Compl. ¶ 1. Among other things, his son's delayed enrollment in a U.S. school, the family's present sparse living accommodations, and challenges in Plaintiff's professional life are all sources of hardship. *Id.* ¶ 2; Pl.'s Opp'n, ECF No. 8, [hereinafter Pl.'s Opp'n], at 6.

On November 3, 2023, approximately four months after his case was placed in administrative processing, Plaintiff filed the instant lawsuit, raising a claim of unlawful withholding and unreasonable delay under the APA and the Mandamus Act. Compl. at 4–8. Plaintiff contends that Defendants have violated the APA "as they are unlawfully withholding or unreasonably delaying action on" his application "and have failed to carry out [their] adjudicative functions[.]" *Id.* ¶ 17. Plaintiff seeks an order from the court mandating adjudication of his application within 15 calendar days of the order's entry. *Id.* ¶ 33. On February 5, 2024, Defendants moved to dismiss. Defs.' Mot.

### III.

Defendants have moved to dismiss under Rules 12(b)(1) for lack of standing and (b)(6) for failure to state a claim.

On a motion to dismiss for lack of standing, a federal court must presume that it "lack[s] jurisdiction unless the contrary appears affirmatively from the record." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation and internal quotation marks omitted). The burden of establishing the elements of standing "rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The court must accept "well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor," and at the motion to dismiss stage, the plaintiff must establish that standing is plausible. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

To survive a motion to dismiss under Rule 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim pleads facts that are not "'merely consistent with' a defendant's

3

liability" but that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. Courts do not, however, "assume the truth of legal conclusions . . . nor . . . accept inferences that are unsupported by the facts set out in the complaint." *Arpaio*, 797 F.3d at 19 (citation omitted).

## VI.

### A.

Defendant raises a threshold argument for dismissal—that Plaintiff lacks standing. This argument does not prevent the court from considering the merits.

To establish standing, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Defendants argue that Plaintiff fails to establish the first and third standing elements. Defs.' Mot. at 6.

As to injury in fact, Defendants contend that Plaintiff has not suffered a cognizable injury because non-citizens have no right to a visa or to travel to the United States. *Id.* Multiple courts in the District have rejected that very argument, and this court joins them. *See, e.g.*, *Babaei v. U.S. Dep't of State*, No. 23-cv-1244 (TJK), 2024 WL 1178453, at *3 (D.D.C. Mar. 19, 2024) (finding standing for Iranian nationals who alleged an unreasonable delay in processing of their J-1 visa applications) (collecting cases). Plaintiff alleges a concrete injury, "that the processing of [his]

application[] has been unreasonably delayed and that this delay has injured [his] professional and financial interests." *Id.*; Compl. ¶¶ 2–3.

Defendants also assert that any alleged injury is not redressable because "Plaintiff offers nothing to suggest that compelling a further adjudication of the Visa Application now will result in anything but another refusal as those administrative processes have yet to conclude." Defs.' Mot. at 14. But that argument misconstrues the injury. While Defendants cannot direct a particular outcome with respect to Plaintiff's visa adjudications, nothing precludes them "from directing consular officers to conclude matters presented to them within a reasonable time." *Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022) (cleaned up).[2] Such a limited court order would redress Plaintiff's injuries.

**B.**

To state a claim for unreasonable delay under the APA, a plaintiff must plausibly allege that (1) "the agency failed to take a discrete action that it is required to take" and (2) "the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (internal quotation marks and citation omitted). Defendants contend that Plaintiff cannot satisfy either requirement. The court does not consider the first, because Plaintiff's claim fails on the second.[3]

---

[2] Defendants note that the consular official "refused" Plaintiff's visa application under § 221(g) of the INS. *See* Defs.' Mot. at 3, 16–17. To the extent that Defendants claim this refusal qualifies as a final decision, that assertion is belied by the well-pleaded factual allegations. "Although the State Department may choose to characterize a section 221(g) notification as a 'refusal,' that magic word is not a get-out-of-review-free card." *Al-Gharawy*, 617 F. Supp. 3d at 16 (cleaned up). At the motion to dismiss stage, the court must "determine whether the complaint sufficiently alleges that the consular officer's 'refusal' was in fact an 'interim' or final decision." *Id.* Here, the Complaint alleges that the consular officer informed Plaintiff that the applications were placed in "administrative processing." Compl. ¶ 14. That is not a "final decision." *Carter v. U.S. Dep't of Homeland Sec.*, No. 21-cv-422, 2021 WL 6062655, at *3 n.3 (D.D.C. Dec. 22, 2021) ("[R]efusals followed by 'administrative processing' are not 'final decisions.'").

[3] Because the court holds the alleged delay is not unreasonable, it does not address whether a recent unpublished decision from the D.C. Circuit, *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam), settles the otherwise open question whether "consular officers are indeed subject to a discrete, mandatory duty to timely complete administrative processing after a visa application has already been 'refused.'" *Baygan v.*

When determining whether a delay in agency action is unreasonable, the court is guided by the familiar six *TRAC* factors:

> (1) [T]he time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telecomms. Rsch. & Action Ctr. v. FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984) (internal citations omitted). The D.C. Circuit recently balanced these factors in the context of an unreasonable delay claim involving the processing of EB-5 investor visa applications, *see Da Costa*, 80 F.4th at 338–39, and it held that a four-and-a-half-year wait for a visa adjudication was not unreasonable, *see id.* at 342, 346. *Da Costa* compels the same result here.

*First and Second TRAC Factors*. "The first two factors are often considered together[.]" *Pourabdollah v. Blinken*, No. 23-cv-1603 (DLF), 2024 WL 474523, at *7 (D.D.C. Feb. 7, 2024) (citation omitted). Defendants assert that as Congress has not established a timetable in which courts must adjudicate visa applications, courts should look to case law and the agency is entitled deference. Defs.' Mot at 29. Defendants also argue that the delay suffered by Plaintiff is "shorter than what courts in this District have routinely concluded does not constitute unreasonable delay." *Id.* Plaintiff responds that Defendants have not offered any reason for the delay and that other cases have been processed more quickly. Pl.'s Opp'n at 17. Plaintiff also cites to 8 U.S.C

---

*Blinken*, No. 23-cv-2840 (JDB), 2024 WL 3723714, at *5 n.1 (D.D.C. Aug. 8, 2024) (citing *Karimova*, 2024 WL 3517852).

6

§ 1571(b), which expresses "the sense of Congress" that "immigrant benefit application[s] should be completed not later than 180 days after the initial filing of the application[.]" Pl.'s Opp'n at 17–18.

Defendants are correct that Congress has not supplied a timetable for the agency to adjudicate nonimmigrant worker visa applications. The 180-day period cited by Plaintiff is no more than an "aspirational statement" that does not establish a firm timetable. *Da Costa*, 80 F.4th at 344 (recognizing that Congress has made an "aspirational statement" that visas should be processed within 180 days). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Sarlak v. Pompeo*, No. 20-cv-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). In this District, "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Id.* (internal quotation marks and citation omitted). Thus, the approximately 14-month delay between June 2023, when Plaintiff appeared for his consular interview, and the date of this opinion is, at best, neutral. *See Da Costa*, 80 F.4th at 344 (finding that the multi-year passage of time in that case "has not reached the level of disproportionately [the Circuit had] previously held sufficient to grant relief").

*Fourth TRAC Factor*. In *Da Costa*, the court concluded that the fourth *TRAC* factor—the effect of competing agency priorities—"strongly disfavor[ed]" the plaintiffs because moving their "petitions to the front of the line would disrupt competing agency priorities with no overall improvement in the [agency's] backlog." *Id.* at 343. So too here. Granting Plaintiff the relief he seeks simply would move him "ahead of longer-pending petitions" with no overall gain in administrative processing. *Id.* at 343–44.

Plaintiff contends that he "is not asking to be put ahead of others," but rather, suspecting that "others may have skipped the line ahead of him," asks only "that the Defendants engage in normal processing of his visa." Pl.'s Opp'n at 19. But Plaintiff nowhere explains what is "normal," and he provides the court no reason to believe that his visa application has been handled outside the ordinary course. This factor thus "weighs against judicial intervention to expedite [the] adjudication" he seeks. *Da Costa*, 80 F.4th at 344.

*Third and Fifth TRAC Factors.* The overlapping third and fifth *TRAC* factors consider whether "human health and welfare are at stake" and the "nature and extent of the interests prejudiced by delay." *TRAC*, 750 F.2d at 80. Plaintiff alleges that, as a result of Defendants' delay, he and his family have suffered "personal, financial, and emotional hardship" relating to their "sparsely furnished" accommodations, his son's academic and extracurricular enrollment, and Plaintiff's own difficulty in "managing [the] nine-hour time difference" between Switzerland and California for his work. Compl. ¶¶ 2–3. The court sympathizes with Plaintiff and his family for the difficulties they have faced. But such harms, "along with the uncertainty that results any time an individual must continue to wait to secure a benefit, are insufficient to tip *TRAC* factors three and five" in Plaintiff's favor. *Da Costa*, 80 F.4th at 345.

*Sixth TRAC Factor.* Finally, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80 (internal quotation marks and citation omitted). Here, Plaintiff does not allege that the agencies involved in the adjudication process have acted improperly. Pl.'s Opp'n at 21.

\*   \*   \*

After weighing the *TRAC* factors, the court concludes that Plaintiff has failed to state a claim that the 14-month delay in processing his visa application is unreasonable. *See, e.g.*,

*Barazandeh v. U.S. Dep't of State*, No. CV 23-1581 (BAH), 2024 WL 341166, at *10 (D.D.C. Jan. 30, 2024) (collecting similar cases).

## B.

To the extent that Plaintiff advances a separate claim of agency action unlawfully withheld, that too fails. *See* Compl. ¶ 17. "Section 706(1) permits judicial review of agency inaction, but only within strict limits." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016). "Courts can compel an agency to take a *discrete* agency action that it is *required* to take." *Id.* (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). The required action must be "'ministerial or non-discretionary[,]' amounting to a 'specific, unequivocal command.'" *Id.* (quoting *Norton*, 542 U.S. at 63–64).

Citing § 555(b) of the APA, Plaintiff claims that Defendants had a duty arising under the APA to conclude matters presented to them "within a reasonable time." Pl.'s Opp'n at 9. Plaintiff, however, cites no statute or regulation requiring the State Department to process an application for a non-immigrant worker visa within a time certain. Thus, as framed, Plaintiff's "unlawfully withheld" claim is co-extensive with his "unreasonable delay" claim and thus fails for the reasons already discussed.

## C.

The court likewise dismisses Plaintiff's claims under the Mandamus Act. The Mandamus Act claim fails because the APA provides an adequate remedy at law. *See, e.g.*, *Arabzada v. Donis*, No. 23-cv-655 (RC), 2024 WL 1175802, at *5 n.1 (D.D.C. Mar. 19, 2024); *Rai v. Biden*, 567 F. Supp. 3d 180, 200 (D.D.C. 2021).

## V.

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 6, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: August 20, 2024

Amit P. Mehta
United States District Court Judge